RECORD NUMBER: 17-1303

# United States Court of Appeals

### *for the*

# Fourth Circuit

D'JARIS A. MOORE,

*Plaintiff/Appellant,*

– v. –

ELITE METAL PERFORMANCE LLC,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT BEUFORT

# OPENING BRIEF OF APPELLANT

JAMES A. BROWN, JR.
LAW OFFICES OF
JIM BROWN, PA
P.O. Box 592
Beaufort, SC 29901
(843) 470-0003
jimbrownlaw@hargray.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  17-1303          Caption:  D'Jaris A. Moore v. Elite Metal Performance LLC, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

D'Jaris A. Moore
(name of party/amicus)

_____

 who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                              ☐YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:
        Not Applicable

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                                  ☐YES ☐NO
       If yes, identify all such owners:
        Not Applicable

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/James A. Brown, Jr _____    Date: ___3/21/2017___

Counsel for: D'Jaris A. Moore _____

## CERTIFICATE OF SERVICE
**************************

I certify that on ___3/21/2017___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robin A. Braithwaite
Braithwaite Timmerman, LLC
Post Office Box 324
Aiken, South Carolina 29802

Taylor S. Braithwaite
Braithwaite Timmerman, LLC
Post Office Box 324
Aiken, South Carolina 29802

/s/James A. Brown, Jr _____
(signature)

___3/21/2017___
(date)

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT

STATEMENT OF JURISDICTION.......................................................................... 1

ISSUES ON APPEAL ............................................................................................. 1

STATEMENT OF THE CASE................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

SUMMARY OF ARGUMENT ................................................................................ 5

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ........................................................................................................... 6

ANALYSIS .............................................................................................................. 6

      A)     STRICT LIABILITY-MANUFACTURING DEFECT....................... 7

      B)     NEGLIGENCE.......................................................................... 13

      C)     BREACH OF WARRANTY ............................................................ 13

CONCLUSION ...................................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Boone v Boone*,
      546 SE2d 191 (SC 2001) ................................................................ 15, 19

*Branham v Ford Motor Co.*,
      701 SE2d 5 (SC 2010) ........................................................................ 7

*Ciampichini v. Ring Bros.*,
      339 NYS2d 716 (NY SCt App Div. 4th Dep't 1973)........................ 15, 16, 19

*Dawkins v State*,
      412 SE2d 407 (SC 1991) .................................................................... 19

*Erie R.R. Co. v Tompkins*,
      64 US 134 (1938)................................................................................ 7

*Foster v. American Home Products, Corp*,
      29 F3d 165 (4th Cir. 1994) .................................................................. 6

*Graves et all v CAS Medical Systems, Inc.*,
      735 SE2d 650 (SC 2012) ................................................................ 7, 8, 9

*HealthSouth Rehab. Hosp. v. Am. Nat.'l Red Cross*,
      101 F3d 1005 (4th Cir. 1996) .............................................................. 6

*In re Merritt Dredging*,
      839 F2d 203 (4th Cir 1988) ................................................................ 14

*MacPherson v Buick Motor Company*,
      111 NE 1050 (NY Ct App. 1916)........................................................ 9

*Myrick v. Prime Ins. Syndicate, Inc.*,
      395 F3d 485 (4th Cir. 2005) .............................................................. 6, 7

*Pierce v Ford Motor Company*,
      190 F2d 910 (4th Cir 1951) .............................................................. 9, 10

*Salvador v. Atl. Steel Boiler Co.*,
    319 A.2d 903 (Pa. 1974) .................................................................. 15, 16, 19

*Watson v Ford Motor Co*,
    699 SE2d 169 (SC 2010) ......................................................................... 7, 8

**RULES AND STATUTES**

28 USC § 1291 ................................................................................................ 1

28 USC § 1332 ................................................................................................ 1

Fla Stat § 627.318. ....................................................................................... 14

NC Gen Stat. § 25-2-318 ............................................................................. 14

SC Code § 36-2-318 ................................................................................ 14, 19

**CONSTITUTIONAL AMENDMENTS**

Eighth Amendment ......................................................................................... 2

**OTHER AUTHORITIES**

David G. Owen, *Manufacturing Defects*, 53 SCLRev. 851 (2002) ....................... 8, 9

**STATEMENT OF JURISDICTION**

Jurisdiction in the appellate court is pursuant to 28 USC § 1291.

Jurisdiction in the trial court was pursuant to the diversity of parties.  28 USC §

1332.

**ISSUES ON APPEAL**

Did the trial court improperly grant summary judgment in favor of the

Appellee?

A)    Did the Appellant offer sufficient circumstantial evidence of the

unreasonably dangerous and defective condition of the tow dolly to

sustain a cause of action for strict liability?

B)    Did the Appellant offer sufficient circumstantial evidence of the

unreasonably dangerous and defective condition of the tow dolly to

sustain a cause of action for neglience?

C)    Did the trial court err by failing to apply the facts advanced  by the

Appellant to the appropriate factors of the "most significant

relationship test" and failing to consider the public policy exception?

**STATEMENT OF THE CASE**

On December 28, 2015, the Appellant filed a Summons and Complaint in

the Jasper County, South Carolina Court of Common Pleas.  The Appellant

alleged three causes of actions against three defendants: Robert Murphy (Murphy), Elite Metal Performance, LLC (Appellee or Elite), and Car Shop Trailer Services, LLC d/b/a Best Price Trailers (Best Price). JA, p. 9-16. The Appellant alleged a claim of negligence against all three defendants and claims of strict liability and breach of warranty against the Appellee (Elite) and Best Price. JA, p. 12-16.

This matter was removed to federal court by Elite on February 2, 2016. JA, p. 7-8. Elite filed its Answer on the same day alleging six defenses. JA, p. 18-25. These defenses included Failure to State a Claim, a general denial, Intervening and Superceding Acts of a Co-Defendant, Sole Acts of a Third Party, Industry Custom and State of the Art, and a Eighth Amendment constraint upon punitive damages. JA, p. 18-24.

The Appellant settled with the Defendants Murphy and Best Price. JA, p. 391.

Following discovery, Elite filed a Motion for Summary Judgment on October 26, 2016. JA, p. 39-40. On November 14, 2016, the Appellant filed a Response in Opposition to Summary Judgment. JA, p. 84-94. Elite filed a Reply to this response on November 26, 2016. JA, p. 399-405.

The trial court granted Appellee Elite's Motion for Summary Judgment by written Order filed on January 24, 2017. JA, p. 425-431. The Appellant filed a

2

Motion for Reconsideration on February 3, 2017. JA, p. 432-433. The trial court denied the Motion for Reconsideration by Order filed on February 7, 2017. JA, p. 445-450.

Undersigned counsel was retained and filed a Notice of Appeal on March 7, 2017 and this Brief follows. JA, p. 451.

**STATEMENT OF FACTS**

On June 9, 2015, Robert Murphy (Murphy) was driving northbound on Interstate I-95 near exit 8 in the State of South Carolina. JA, p. 97-98. Murphy, a Florida resident, was driving an RV towing a tow dolly. JA, p. 97. A Ford Explorer and a Harley Davidson were being towed on the tow dolly. JA, p. 10, l. 4- p. 11, l. 7.

The Appellant was driving her car in the southbound lane of I-95. JA, p. 97-98. The tire and wheel assembly from the tow dolly became separated from the tow dolly. JA, p. 132, l. 5-25. This wheel assembly crossed the median and struck the vehicle in front of the Appellant. JA, p. 97-98.

After ricocheting off the vehicle in front of the Appellant, the wheel assembly struck the front roof area of the Appellant's S550 Mercedes. JA, p. 97-98. This impact injured the Appellant. JA, p. 60, l. 6-20. This impact caused damage to her automobile. JA, p. 62, l. 25- p. 634, l. 3.

3

The tow dolly was purchased by Murphy from Defendant Car Shop Trailer Services, LLC d/b/a Best Price Trailers (Best Price) on June 5, 2015, four days before the wheel assembly separated from the axle. JA, p. 161, l. 6-19. The tow dolly was manufactured in North Carolina by the Appellee Elite Metal Performance, LLC (Elite) and was transported from Elite to Best Price through South Carolina on June 4, 2015, five days before the date the Appellant was injured. JA, p. 407-408.

Following the collision between the wheel assembly and the Appellant's car, the tow dolly was towed to a local hotel. The wheel assembly was never located. JA, p. 128, l. 5-22. Defendant Murphy took photos of the tow dolly which were reviewed by several witnesses and discussed during their testimony. JA, p. 205, l. 14- p. 206, l. 8.

During depositions, Robin Hanger testified that the photos depicted the tow dolly with the tire, wheel, hub, and outer bearing missing on one side of the axle. JA, p. 132, l. 5-25. Hanger testimony indicated the tow dolly as sold had two wheel assemblies. JA, p. 221, l. 1-10. When Hanger's company, Defendant Best Price, sold the tow dolly, it was sold as new.

A representative of Elite, Walter Gouveia, testified during deposition that the bearings on the axle were likely manufactured by "Redneck" bearings. JA, p.

4

39, l. 21- p. 40, l. 25.  Gouveia indicated the "Redneck" bearings had to be hand-packed with grease.  He indicated that the dolly would fail if the bearings were not lubricated.  JA, p. 291, l. 19-22.

Another representative of Elite, Ryan Gouveia also testified at a deposition that the pictures taken by Murphy of the damaged dolly indicated a missing wheel, missing drum, and missing hub.  JA, p. 344, l. 15-23.

No evidence suggested that Murphy did anything to contribute to, modify or alter the tow dolly in any way.  Evidence suggests the tow dolly had been driven less than 1000 miles before losing the wheel assembly. JA, p. 291, l. 24-25.  Hanger testified that Best Price did no work on the wheel assembly.  JA, p. 155, l. 24- p. 161, l. 19; & p. 175, l. 15-23.

**SUMMARY OF ARGUMENT**

The trial court should have denied summary judgment.  Sufficient circumstantial evidence existed regarding a manufacturing defect in the tow dolly's axle such that the products liability and negligence claim should have been submitted to the jury.  Further, sufficient facts existed to support the application of the South Carolina third party beneficiary provisions regarding the breach of warranty claim.

5

**STANDARD OF REVIEW**

An appellate court reviews a grant of summary judgment *de novo*. *Foster v. American Home Products, Corp*, 29 F3d 165, at 168 (4th Cir. 1994).

**ARGUMENT**

The trial court erred by granting summary judgment.

As to the strict liability and negligence claims, the court neglected to consider significant circumstantial evidence of the unreasonably dangerous and defective condition of the tow dolly. As to the breach of warranty claim, the trial court failed to apply the facts to the "most significant relationship test" factors and failed to consider the public policy exception.

Because of these errors, this Court should reverse the grant of summary judgment and remand this matter for further proceedings and trial.

**ANALYSIS**

When considering a motion for summary judgment, the trial court must review the facts in the light most favorable to the non-moving party. *HealthSouth Rehab. Hosp. v. Am. Nat.'l Red Cross*, 101 F3d 1005, at 1008 (4th Cir. 1996). "If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and a motion for summary judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F3d 485, at 489-490 (4th Cir.

2005).   In a case litigated in federal court pursuant to diversity jurisdiction, the court must apply the law of the forum state.  *Erie R.R. Co., v Tompkins*, 64 US 134 (1938).

## A)    STRICT LIABILITY-MANUFACTURING DEFECT

The trial court should have denied Elite's request for summary judgment because sufficient evidence existed to support the presentation of the Appellant's strict liability claim to the jury.

When considering a summary judgment motion in a products liability case applying South Carolina law, the court must examine whether there is sufficient evidence offered by the plaintiff showing that A) she was injured by the product; B) the product was in essentially the same condition at the time of the accident as it was when it left the hands of the defendants, and 3) the injury occurred because the product was in a defective condition unreasonably dangerous to the user. *Graves et all v CAS Medical Systems, Inc.*, 735 SE2d 650 (SC 2012).

There are three sub-categories of product liability claims: defective design, defective manufacture, and defective warning or marketing.  See *Watson v Ford Motor Co*, 699 SE2d 169, at 174 (SC 2010).  Claims of a defective design require proof beyond claims involving defective manufacture.  *Branham v Ford Motor Co.*, 701 SE2d 5, at 16 (SC 2010)(A plaintiff alleging a design defect must "point

7

to a design flaw" and "show how his alternative design would have prevented the product from being unreasonably dangerous.") It is a question of law as to whether any expert testimony is required in a products liability case. *Graves*, at 659.

In contrast to a design defect claim, commentators note that certain circumstances offered by a plaintiff in a manufacturing defect case create a sufficient basis to infer defectiveness of a product without resort to either *res ipsa* or the use of expert testimony. See David G. Owen, *Manufacturing Defects*, 53 SCLRev. 851 (2002). As Professor Owen discusses, a sufficient prima facie case of defectiveness of a product might be inferred from evidence that: "1) the product malfunctioned, 2) the malfunction occurred during proper use, and 3) the product had not been altered or misused in a manner that probably caused the malfunction." *Owen*, at 873. As Professor Owen notes, some states call this the "malfunction theory," some refer to this as the "indeterminate defect theory," but "most courts refer to it simply as a principle of circumstantial evidence." *Owen*, at 873, n. 123.

South Carolina does not recognize *res ipsa loquitur*. *Watson*, at 179. However, South Carolina law provides that "any fact in issue may be proved by circumstantial evidence as well as direct evidence, and circumstantial evidence is

just as good as direct evidence..." *Graves*, at 658. As noted by Professor Owen, the ability to rely solely upon circumstantial evidence without resort to *res ipsa* or an expert is consistent with court rulings in 39 states. *Owen*, at 882, n. 190.

This is consistent with the early products liability case of *MacPherson v Buick Motor Company,* 111 NE 1050 (NY Ct App. 1916). More than a century ago, Judge Cardozo began the modern jurisprudential period in manufacturing cases by recognizing that a manufacturer should be liable for a product, not inherently dangerous, if defectively constructed.

The *MacPherson* case was cited by the Fourth Circuit in the case of *Pierce v Ford Motor Company*, 190 F2d 910 (4th Cir 1951). The Court in *Pierce* reviewed a grant of summary judgment in a case arising from injuries caused by a manufacturing defect in certain parts engineered to keep the tires aligned. The *Pierce* Court noted that the review of the sufficiency of the evidence would be done "[w]ithout involing the *res ipsa loquitur* rule." *Pierce*, at 912.

In *Pierce*, the Fourth Circuit reversed the grant of summary judgment. The *Pierce* Court found significant the fact that the vehicle driven by Pierce was new, that it had been owned less than two weeks, that it had been driven less than 900 miles, and that there was no intervening act by the consumer causing damage to the vehicle. *Pierce*, at 912. The *Pierce* Court reversed the grant of summary

9

judgment without any reference to expert testimony. *Id.*

The *Pierce* Court noted the propriety of a federal court, sitting in diversity, to develop the law. *Pierce* noted that it was the federal court's "duty to find the law of the state as best we can from other sources, and we have the right to assume nothing else appearing, that it has not lagged behind other states in the development of its common law concepts and that the law prevailing within its jurisdiction is not contrary to the great weight of modern authority." *Pierce*, at 915. The *Pierce* Court opined that summary judgment "was never intended to enable the parties to evade jury trials or have the judge weigh evidence in advance of its being presented." *Pierce*, at 915.

In the case at bar, the trial court correctly identified the elements of the strict liability cause of action. JA, p. 428-429. The court correctly noted that *res ipsa loquitur* did not apply. However, the trial court did not note that purely circumstantial evidence could suffice to advance a case past summary judgment.

Further, the trial court did not note the distinction between the analysis of a design defect and a manufacturing defect. The trial court did not note that an expert may not necessarily be required. And the trial court only cited a design defect case during the analysis of the strength of the Appellant's opposition to summary judgment.

10

Instead, the trial court granted summary judgment as to the strict liability manufacturing defect claim by finding that "the only evidence Plaintiff has offered of the "tow dolly's alleged defectiveness is that the wheel came off." JA, p. 430. The court equated this to mere proof that the product failed. JA, p. 450. This conclusion might be accurate if that was the only evidence presented by the Appellant.

However, the trial court omitted reference to other facts demonstrating the defect in the manufacture of the tow dolly. To begin, the tow dolly was only sold, as new, to end user Murphy four (4) days before the wheel assembly struck the Appellant. JA, p. 161, l. 6-19 & p. 407-408. In fact, the tow dolly only left the manufacturer five (5) days before the injury to the Appellant.

No evidence indicates that Murphy contributed in any way to the wheel assembly's separation. JA, p. 314, l. 2- 13 & p. 388, l. 15- p. 389, l. 12.

Further, more parts than just the wheel separated from the tow dolly. JA, p. 275, l. 17- p. 276, l. 4. It is uncontradicted that the entire outer hub assembly separated from the axle and was never found. JA, p. 313, l. 7-10. The outer bearing holding the hub in place was also missing.

Elite's representatives agreed that the hub could have come over the top of the castle nut which was still in place on the axle. JA, p. 276, l. 16- 19. Elite

11

agreed that the missing hub could be with the wheel.  JA, p. 276, l. 20-24.

Elite's representatives conceded that bearings used in the manufacture of this dolly required lubrication during assembly.  JA, p. 287, l. 21- p. 40, l. 25. Further, Elite could not provide any proof beyond custom to show that the bearings on the tow dolly in question were inspected for proper lubrication.  JA, p. 292, l. 9- p. 293, l. 11.  In fact, Elite uses a checklist as part of a quality control inspection but this checklist does not include any reference to an inspection of the bearing lubrication.  JA, p. 293, l. 4-11.

Elite agreed that it had manufactured other tow dollies which were distributed by Best Price.  JA, p. 268, l. 11- p. 270, l. 4.  Elite indicated that no other trailers or dollies it manufactured ever experienced a similar failure.  JA, p. 297, l. 5-9.  This suggests that a design defect was not involved.

Hanger testified that he had received multiple trailers and tow dollies from Elite over the years.  JA. p. 120, l. 10-24.  Best Price representative Robin Hanger testified that he made no modifications to the axle or wheel assembly.  JA, p. 155, l. 24- p. 162, l. 19 & JA, p. 155, l. 15-23.  Robin Hanger testified that his observation of photos of the damaged axle showed a black burn mark at the spot where the outer bearing was previously located as opposed to the inner bearing which remained on the axle with dirt observed embedded in the lubricant.  JA, p.

172, l. 11- p. 173, l. 19.

The trial judge did not recognize any of these facts in his order at all. Instead, as noted above, he indicated that the only evidence submitted by the Appellant was that the wheel fell off.  In fact, the Appellant provided sufficient facts from which a manufacturing defect can be inferred without resort to *res ipsa loquitur* or the use of expert testimony.

Thus as to the strict liability claim, the trial court erred, not by applying the wrong law, but instead by overlooking the presence of many other facts advancing the Appellant's case.

**B)     NEGLIGENCE**

The trial court granted summary judgment as to the negligence claim finding that this cause had an element in common with the cause of action for strict liability.  The court opined that insufficient proof that the dolly was manufactured in a defective condition, unreasonably dangerous to the user, had been presented by the Appellant.  For the same reasons indicated in the analysis above, the trial court erred in making this conclusion and the grant of summary judgment should be reversed.

**C)     BREACH OF WARRANTY**

The trial court erred by failing to apply the facts advanced by the Appellant

to the appropriate factors of the "most significant relationship test" and failing to consider the public policy exception.

In South Carolina, the choice of law test in a breach of warranty claim is found in case law premised upon the Restatement (Second) of Conflicts. *In re Merritt Dredging*, 839 F2d 203, at 206 (4th Cir 1988). The choice of law test is important because South Carolina's breach of warranty includes protection of third parties. SC Code § 36-2-318. In contrast, both North Carolina and Florida's breach of warranty provisions exclude protection of most third parties. NC Gen Stat. § 25-2-318 & Fla Stat § 627.318.

Per South Carolina appellate court rulings, the choice of law determination requires application of the "most significant relationship test." *In re Merritt Dredging*, at 206. The factors to be analyzed are: a) needs of interstate and international systems; b) relevant policies of the forum; c) relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; d) protection of justified expectations; e) policies underlying the particular field of law; f) certainty, predictability, and uniformity of result; g) ease in determination and application of the law. *In re Merritt Dredging*, at 207. The Restatement's commentary and application notes provide guidance regarding the application of these factors.

14

Further, the South Carolina Supreme Court has also recognized a "public policy exception" to the choice of law rules. *Boone v Boone*, 546 SE2d 191 (SC 2001). The standard for application of the public policy exception is that "foreign law may not be given effect in this state if it is against good morals or natural justice." *Boone*, at 193 (internal quotations and citations omitted). Other jurisdictions employing the same law as North Carolina and Florida have extended the protection of warranty to third party beneficiary plaintiffs based on the public policy exception. *Salvador v. Atl. Steel Boiler Co.*, 319 A.2d 903 (Pa. 1974); *Ciampichini v. Ring Bros*., 339 NYS2d 716 (NY SCt App Div. 4th Dep't 1973).

In *Ciampichini*, a New York appellate court considered the liability of a manufacturer for damages caused to a third party when a tow hitch on a tow dolly failed. The trial court found the plaintiff's case deficient as a matter of law. The appellate court overruled finding that it was "both reasonable and just to extend to bystanders the protections against a defectively manufactured article." *Ciampichini*, at 720.

In reaching this conclusion, the *Ciampichini* Court refused to restrict recovery to those who were users. The Court reasoned that bystanders needed protections at least equal to users because they "have less opportunity to detect any defect than either purchasers or users." *Id*, at 720. Importantly, the Court

15

explicitly stated that the decision "was one of policy but is mandated by both justice and common sense." *Id*.

In *Salvador*, the appellate court affirmed the application of the public policy exception. The *Salvador* Court affirmed application of the public policy exception despite the fact that Pennsylvania law excluded third party beneficiary protections to the plaintiff in that case. The *Salvador* Court agreed that public policy trumped the traditional analysis noting the unfairness of permitting a manufacturer from " plac[ing] a defective article in the stream of commerce and then avoid[ing] responsibility for damages caused by the defect." *Salvador*, at 907.

In the case at bar, the trial court correctly determined the choice of law by applying the most significant relationship test (MSRT). JA, p. 427.

However, the order does not provide any explicit application of the facts favoring the Appellant to the factors. Instead, the very next sentence following the listing of the seven MSRT factors is a listing of other factors primarily addressing concerns about contracting principles such as formation, validity, performance, and interpretation. JA, p. 427-428. The trial court's application of these contracting principles centered on facts such as the situs of the design, manufacture, and sales and the situs of the incident injuring the Appellant.

16

Had the court applied the MSRT factors to the facts advocated by the Appellant, the result would have been different. Specifically, consideration of factors b), c), and d) would have produced a different result. All three of these factors involve consideration of the various policies and expectations of the states.

As to factor b), in a correct application, the trial court would have noted that South Carolina law's third party beneficiary protections are premised upon a policy of protection of the general public. The same third parties protected by South Carolina law had no opportunity to inspect the very items causing injury. This stands in contrast to the manufacturer, distributor, and purchaser.

As to factor c), the other interested states' breach of warranty laws indicate a policy of promoting corporate protection. Limiting liability reduces claims. However, corporations in these states can not expect a liability shield for defective items placed into the stream of commerce.

As to factor d), Best Price and Elite both had reason to believe they would be subject to the rules of South Carolina. Best Price sold many tow dollies manufactured by Elite over the years. Both Elite and Best Price knew the dollies were being delivered for sale by passage through South Carolina as that is the most direct and profitable route of delivery. As manufacturer of a vehicle with the primary purpose of traveling on the roadways of the United States, Elite

17

certainly expected that resulting injury could be evaluated pursuant to other states' law.

A closer look at the tow dolly in question illustrates this point. This tow dolly was designed for persons to transport repeatedly unlike a good such as a TV which is generally only transported once in the distribution chain and once by the consumer. This good, the tow dolly, is a vehicle manufactured with the primary purpose of travel.

Further, Elite's tow dolly at issue here accommodated the transportation of other vehicles and was used by Murphy to carry both a Harley Davidson and a Ford Explorer behind a recreational vehicle. JA, p. 37. In fact, the very tow dolly in question was used to transport two other tow dollies in interstate travel. JA, p. 264, l. 16-21. Again, Elite knew that the dolly would travel through South Carolina as part of the performance of the sale to Best Price.

If not inherently dangerous, it is certainly inherently mobile. A proper application would have noted that goods intended for repeated travel in the interstate system are especially susceptible to causing injuries to third parties. Thus, application of the facts advanced by the Appellant to the MSRT factors would have favored the application of South Carolina law.

The trial court also failed to even reference the public policy exception. JA,

p. 426-428.  Had the court done so, South Carolina law would have applied.  This application would have extended protection to the Appellant.

Similar to the policy interest discussed in *Ciampichini* referenced above, South Carolina has a policy interest in "protecting third party beneficiaries from any technical rules of privity."  SC Code § 36-3-318, comment 2.  Further, barring recovery that would otherwise be available is prejudicial to general interests of South Carolina citizens.  *Dawkins v State*, 412 SE2d 407 (SC 1991).  This public policy interest has been held significant enough to override traditional South Carolina choice of law principles.  See *Boone*.

Here, it strains reason to believe that South Carolina's interests in protecting third parties from injury occurring in South Carolina becomes subservient to the interests of corporations in foreign jurisdictions who manufacture and distribute goods intended for interstate use.  South Carolina's courts would surely recognize that it is against public policy to "permit the manufacturer to place a defective article in the stream of commerce and then avoid responsibility for damages caused by the defect."  *Salvador*, at 907-908.

Thus, had the court applied the facts supporting the Appellant's position to the MSRT factors, South Carolina law would have been applied to the breach of warranty cause of action.  Further, the public policy of South Carolina overrides

19

any MSRT analysis favoring application of the laws of North Carolina or Florida.

This analysis would have resulted in the denial of summary judgment as to this

cause.

**CONCLUSION**

Therefore, based upon the facts offered by the Appellant below and

considering the above analysis, this Court should reverse the grant of summary

judgment and remand this case to the trial court for further proceedings.

Respectfully Submitted,

By:   /s/ James A. Brown, Jr.                       June 1, 2017
      James A. Brown, Jr.                            Beaufort, SC

      Law Offices of Jim Brown, P.A.
      1600 Burnside Street, Suite 100
      P.O. Box 592
      Beaufort, SC 29901-0592
      Federal ID Number: 7646
      (843) 470-0003

      Counsel for the Appellant
      D'Jaris A. Moore

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## Effective 12/01/2016

**No.** 17-1303        **Caption:** D'Jaris Moore v. Elite Metal Performance

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____4,258____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
WordPerfect 12 [*identify word processing program*] in
Times New Roman, 14 point [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) James A. Brown, Jr.

Party Name D'Jaris Moore

Dated: 6/1/2017

11/14/2016  SCC

# CERTIFICATE OF SERVICE

I certify that on 6/1/17_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

ROBIN A. BRAITHWAITE
TAYLOR S. BRAITHWAITE
BRAITHWAITE TIMMERMAN, LLC
759 Richland Avenue West
Aiken, SC 29802
(803) 649-4144
rbwaite@bfbtlaw.com
taylor@bfbtlaw.com


Counsel for Appellee



/s/ James A. Brown, Jr.                                    6/1/17
_____                          _____
          Signature                                                        Date